Good morning. Welcome to the Ninth Circuit Court of Appeals. It's a pleasure to be here today in San Francisco, especially on such a beautiful day. I look forward to hearing all of the oral argument presentations. We have six cases on our docket this morning. Four have been submitted on the brief, so that means we have two oral arguments that will be presented. Before we begin with the first oral argument case, I want to thank Judge Gary Feinerman. I know Judge Gould and I are very grateful for Judge Feinerman sitting here by designation and assisting us with our docket here this week, and so on behalf of Judge Feinerman. Thank you, judges, and it's an honor and a privilege to be here sitting with you. Judge Gould, good morning. Can you hear us? Good morning. I can hear you perfectly. I also want to thank Judge Feinerman, and without further ado, we can proceed, except I'll mention that if you say it's a nice day in San Francisco, we here have silver skies of Seattle. Very good. Glad to get the update there. So, let me note the first case on our docket, Aaron Atlee Parsons v. Joe Lizarraga, has been submitted on the briefs, and then the case of Rogelio May Reese v. David Bogman also has been submitted on the briefs. So, the next case, which is our first oral argument presentation, is the case of Thomas Voskaris v. Experian Information Solutions. So, ready to proceed? Thank you, Your Honors, and may it please the Court. Miles Clark on behalf of Plaintiff Appellant Thomas Voskaris, and I'd like to preserve one minute of my time for rebuttal. Your Honors, Congress enacted the Fair Credit Reporting Act in large part to protect consumer privacy. Fraud victims like Voskaris are concerned about access to private credit information and are entitled to rely on FICRA Section 1681EA requires Experian to maintain reasonable procedures to ensure that it only furnishes consumer reports for permissible purposes. Here, Voskaris alleged that he successfully directed Experian to remove a Kohl's account as fraudulent, then directed Experian to place an extended fraud alert on his file, but thereafter, on May 20th, 2016, Experian sent Kohl's a consumer report that could not be permissible, given what Voskaris had done to his file. FICRA Section 1681GA1 requires Experian to clearly and accurately disclose all the information it might provide on a consumer report to fraud victims like Voskaris, so he can quickly and comprehensively protect his privacy. This includes the purposes for soft credit inquiries, which not only might appear on his April 2016 reinvestigation consumer report. By failing to disclose the permissible purposes, Experian's disclosures were rendered neither clear nor accurate and violated Section 1681GA1. Let me, since your time is limited, I want to ask you a couple questions here. It seems, at least based on my review, that you were focused below on your claim that Experian failed to disclose Mr. Voskaris' soft credit inquiry information in the consumer disclosures, and that all of your claims were grounded on those allegations in the complaint. So I'm just curious why you haven't waived your claim that Experian impermissibly disclosed Mr. Voskaris' credit information to Kohl's, because you now are making, or seem to be making that. Well, thank you, Your Honor, and I believe the recent case of NAAB, the Capital One Bank, that we submitted a 28-J letter here is instructive in this respect. In NAAB, the court determined that a consumer, you know, would not have the information to be able to determine whether or not a pull was made permissibly or not, because that's within the purview of that, so. But in that case, the plaintiff made factual allegations that negated every permissible purpose under the statute, but you didn't really do that here. Your Honor, I believe that if you look at paragraph 70 to 82 of our complaint, and that's in excerpt of record 144 to 46, as well as 85, that's on 147, then you'll find that those allegations are there. And then on paragraph 128, we said that the above-mentioned violations violated, among others, EA. And so those factual allegations were made, and obviously we filed the complaint prior to NAAB, but what we did is we said that Mr. Pescaris, his only Kohl's account was the fraudulent account, and he had that removed. And then when he put an extended fraud alert on his file, Kohl's could not get his credit report for the only way they could have gotten it without contacting him first, which was for a prescreening inquiry, a promotional inquiry. In section 1681 C-1, the placement of an extended fraud alert on a file excludes Pescaris from those prescreened lists. And so when Kohl's made a pull on May 20th, because the extended fraud alert went on no later than May 16th, they could not have had a permissible purpose to pull credit. So I think that's similar to the concerns that the NAAB court raised. We don't know why Kohl's pulled credit. Experian does know, and they didn't tell Mr. Pescaris that information. Is your claim that Mr. Pescaris was not told why the Kohl's soft credit inquiry was was performed, or is it that Experian should not have made any disclosure to Kohl's? It is both, Your Honor. Okay, and where's the second? Could you repeat again where in the complaint the second allegation is made? Okay, so I was addressing the first allegation that Judge Murguia raised. The second allegation you'll find on excerpt of Record Paragraph 10 and also excerpts of Record Paragraph 145 to 146. Those two factual allegations are But on Paragraph 10, we say that one of the reasons that a disclosure was impermissible, or that the procedures were violated, was because the disclosure was impermissible. That's in the complaint? That is, Your Honor. That's on Paragraph 10. We talk about how the violations of EA can be problematic if you don't get a g-disclosure, and I'll tell you why. That is because Experian doesn't know until it's notified by somebody that an account is fraudulent or that credit is being pulled impermissibly. It might get that notification from the third party, or it might get that notification, as in this case, from Mr. Fiskeres. And so, by failing to disclose the permissible purpose, Experian divested itself, frankly, of the opportunity for Fiskeres to look at that to determine that it was made for an impermissible purpose and notify Experian that, hey, you may have a problem with Kohl's here. So that dovetails with the reasonable procedures designed to ensure that there are impermissible credit pulls, because Experian is not allowing itself the opportunity to obtain information about this. I'm looking at Paragraph 10, and I'm not seeing the allegation that you think is there. I may be missing something. And so perhaps you can educate me. Sure. And if Your Honor could repeat the question that you had about... The question is, where in the complaint is it alleged that Experian did not have a Oh, I'm sorry. I misunderstood your question, Your Honor. I'm talking about the paragraphs from 70 to 85, which factually show that in context, Kohl's would not have had a reason that was permissible under the statute after the placement of the fraud alert and the placement and the deletion of the account. And where in the complaint does it actually say in plain English, Experian should not have made the disclosure to Kohl's because there was no permissible purpose for it to do so? I don't think that it says that in plain English. I think you can infer that from the facts that are contained on Paragraph 70 through 85. Okay. And in response to the motion for judgment on the pleadings, did you argue to the district court that Paragraph 70 through 85 provided the factual predicate for a claim that Experian should not have made a disclosure to Kohl's? In our statement of undisputed material facts on summary judgment and in the motion for judgment on the pleadings, we did reiterate the factual contentions in the complaint. That wasn't my question. Specifically, Your Honor, I believe that we did mention the fact of the Kohl's pull. I can look at the record and find these. Still not answering my question. Where in your response to the motions did you say, not only do we have a claim that Experian failed to tell us what the permissible purposes are, but also we have a claim or I have a claim that Experian did not have, in fact, a permissible purpose to make the disclosure to Kohl's. So if you look on excerpt to record page 61, Your Honor, this is page 20 of our report that plaintiff believed arose in connection with the fraudulently open accounts. These included a May 20th, 2016, Kohl's credit pull, which had occurred after he had successfully done the things that I have been mentioning. So, just briefly, Your Honor, the question about, just want to touch briefly on leave to amend before I reserve the remainder of my time, and that is that we believe the district court abused its discretion in denying leave to amend, not only did it not analyze the futility factor that, you know, in a manner that would have been sufficient, but additionally, we believe that its reliance on 15-1 does not make practical sense, given that this occurred in the, in connection with a motion for a dispositive motion, but also based on this court's guidance in Ebener v. Fresh and elsewhere that says that leave to amend, you know, should be granted even if there is no request made. Well, in your leave to amend, at least the way I read what you said, you wanted, the reason you wanted it, you didn't touch, you did not touch an amended complaint, did you? We did not, Your Honor. And then the reason, it seems that you gave, was for further discovery. Well, and also, Your Honor, because that would be hypothetical, and in fact, the court's reliance on a shawl, on the shawl case, which was not even issued at the time of the briefing, underscores the fact that if we had even done what the district court asked, it would have had to have been modified, perhaps, in light of shawl. Well, but the, so why, why were you requesting leave to amend then, and why are you requesting leave to amend now? What, for what, what would you, do you now know what you would say? Well, I, the leave to amend, because it's not clear to me. Well, it certainly, and I see my time is almost up, may I respond briefly? Go ahead, uh-huh. The, well, I think that we had, we had a 2017 data breach that had, for which Experian had been transmitting a large amount of information to a third party, who never appeared on the disclosures, and so the purposes for the poll would never be alleged there. You know, in addition, Your Honor, and obviously they've, they moved for judgment on the pleadings during the course of discovery, but in light of the court's guidance in shawl, in the, and NAA, both of which are intervening authorities, we can certainly allege facts that would, that would conform to those standards if they may be in, if the pleadings are currently in conflict. Additionally, Your Honor, we can provide. But have you, did you state that in your brief, what exactly you would be, how you would be amending? Well, we couldn't, we couldn't address shawl and NAA because they were not issued yet. Oh, I'm sorry. Go ahead. And, and, and in addition, Your Honor, I believe that, you know, we could, you know, in terms of discovery, you know, obviously we didn't, we didn't specify what that was in particularity, but what I will say is that discovery was ongoing, and one of the things that we have learned was that we could, we could talk about experience procedures for, for. You say discovery was ongoing. I was looking at the, trying to figure out the schedule, actually. This was filed eight months or more after the complaint was filed? That's, that's correct, Your Honor. All right. So how much, the, the district court didn't rule until after the discovery was completed, is that right? That's correct, Your Honor. Okay, thanks. And I see my time has expired. Thank you. May it please the Court, Mayor Fetter for Experian. I will start with the. Can we start with the motion for leave to amend, just since we ended with that with your colleague across the aisle? Sure. Okay. It appears you filed your motion for judgment on the plaintiffs about eight months into the, into the discovery, and I guess is it, is it too harsh to have dismissed the appellant's complaint with prejudice here in light of that timeline, particularly when there'd been no request for leave to amend the previously? I'm just trying to figure out if that was an abuse of discretion by the district court. Right, Your Honor, and, and I don't think it was. First of all, you know, at that, at the time that the motion for leave to amend was filed, there certainly was nothing preventing the plaintiff from putting forth what, I mean that's why the rule is there. What rule? The local rule that asked the, someone seeking leave to amend to submit the proposed amended complaint. Does it say seeking leave to amend or does it say somebody who files a motion for leave to amend? Your Honor, I, I will confess that I do not, standing here, know, know the answer to that question, but. It says unless the court orders otherwise, the moving party must attach the proposed amended pleading to a motion seeking leave of the court to file an amended pleading. Did the plaintiff file a motion for leave to file an amended pleading? The, and again, I apologize, I don't, I hadn't focused on that aspect of, of the procedural history, but there was certainly nothing preventing the plaintiff from, from seeking to do so even once the judge ruled. I mean, there are two aspects to this, right? One is not providing a copy of the proposed amended complaint, and the other is the question of whether there would have been any basis for amending. And, I mean, we've just heard from counsel about what might go into an amended complaint. None of that gets at, at anything that would change the district court's ruling. So, I mean, you have both a futility basis and the absence of anything, you know, to, to suggest to the court what could have been different or, or why an amended pleading would be appropriate. Did the district judge rely on futility in denying motion for leave to amend, or did the district judge simply rely on the local rule? As I read the, the district judge's opinion, I thought that, that he relied on both. The district judge didn't use the word futility. There was one sentence. Correct. Where he said, further, plaintiff failed to show any proposed amendment that would survive the motion for judgment on the pleadings. Correct. But before the district judge ruled on the motion for judgment on the pleadings, how could the plaintiff have known what the district judge was going to find wanting in the original complaint that the plaintiff could fix with an amendment? Well, again, I mean, I think that if there was anything for the plaintiff to, to proffer that would have changed that, that, that is something that could still have been done in the, in the district court. When? Either by way of a motion for reconsideration or, of that aspect of, of the ruling, or, you know, it's, it's possible that the, the judge might have permitted a different sort of motion to bring it before him, but there was not. But after judgment was entered? I mean, this, this ruling ended the case. The ruling ended the case, but, but if plaintiff believed that the court overlooked that there was no opportunity for him to, you know, to, to seek to proffer an amendment that, you know, I don't want to say that's what, that's what I would do, but that's what I would do. Rather than go up on, on appeal with it when it could be addressed right there, if in fact there were anything different. And I think that. So even though the plaintiff was not given leave to amend, you think that the plaintiff should have just amended anyway? Even though the judge said without prejudice and, or with prejudice and under judgment. Or, or sought, or sought reconsideration to, to change that. But isn't that a higher hill to climb under 59E or 60B than it is under 15A2? Is it a higher hill to climb? I think that if, well, I mean, the short answer is yes, generally that. Of course, you would have used the standards for 59E and 60B and you would have said it doesn't meet those, those requirements. Whereas if it's under 15A2, that's a liberal standard that is much more lenient. So of course you would have, of course you would have, you would, to do your job, of course you would have said this is not a 59E or a 60B situation. Well, but in that situation also, we wouldn't be with prejudice and then have to come up on appeal without any, at least you would have before the court what the proposed amendment would be. And you could raise the same, plaintiff could raise the same issue about whether, if he's contending that the district judge was precipitous in, in ruling on it before, before waiting for a motion like that. I mean, frankly, I've had cases where I see something come down with prejudice where I thought it was premature. And my first thought is, you know, that is a mistake or it, we're not up to that point and, and have filed something. But, you know, I think even today, you know, sitting here quite a long time later, you have basically the same, what's being proffered is not anything that would even theoretically change any of the district judge's reasoning. So, you know, I just think that from a judicial economy standpoint, it, I don't think it's the kind of thing that would make sense to send back to a do it in that order. There isn't anything here that actually would suggest a non-feudal amendment. Can I ask you a question? I guess, why didn't you, here you're just, you're moving to dismiss for lack of standing. Correct. Why didn't you do that below? If it's so clear, as you state in your briefs. Well, what I'll personally counsel below, but I think that, you know, what, what I'll say more broadly is I think that we have all been learning in the wake of Spokio about, you know, where the lines are drawn on, on standing. And so, I think that, you know, it probably seemed clearer on appeal or it may just be that because I've dealt with standing issues in other cases, when it got to me, you know, my first question was, was where the standing was and that, you know, has not traditionally been nearly as big a part of district court practice until the spate of recent cases. It may also be that, you know, the original complaint is sort of diffuse in some ways. And so, it may not have been as clear that all that we're talking about is just a question of whether there was a right to have the permissible purposes listed. But, I mean, I'm speculating, obviously. I don't know the reason. But, you know, having seen it, I think that, you know, that issue is something where it's essentially asserting, as an injury, difficulty in monitoring your credit report that, in cases like Huff and Dreher, the courts have said, don't actually, if they wouldn't change anything, it doesn't amount to an Article III injury. And then, I know you're out of time, but I'm going to ask a question, even though that's the case. If we assume the appellant here has not waived his claim that you, in experience, failed to follow the reasonable procedures and improperly disclosed his credit information to Coles, I think it was in May of 2016. Right. I'm trying to figure out why are the allegations in his complaint not sufficient. And I'm looking at paragraphs 80 to 82 of his complaint where he made a disclosure to Coles. And, for example, he alleges that Experian placed a fraud alert in his file, that Experian removed the Coles account from his credit file, that Experian represented to him that he would remove his name and address from the prescreened offer mailing list for five years, and that, nonetheless, Experian disclosed this credit information to Coles. I guess, considering we take these allegations as true and give all reasonable inferences to the appellant at this stage, why isn't this enough to plead that Experian failed to follow reasonable procedures to prevent these alleged impermissible disclosures of appellant's credit information to Coles? Sure. And what's your best case, I guess, too? Okay. I mean, I will, first of all, I guess, I will operate, obviously, on the assumption you started with, although there has been, like throughout this litigation, there actually has been no claim that this was, you know, this case has always been about the disclosure of permissible purpose. This is like, I mean, I'm frankly surprised to get up here and be hearing about this. You know, we pointed out in our brief there was nothing in the reply brief. That said, what's insufficient about it is a lot of things. I mean... And I agree with her. The focus was not this down below. So, but let's go ahead and address this at this point. Sure. And, you know, the, I mean, the comparison to the Niob case is probably a useful one because there you actually have these detailed allegations that at least sought to negate all the various permissible purposes. Here there are, you know, we don't know, based on this, why Experian was not listing a Kohl's account. I mean, it says there was a fraud alert, but it doesn't say the Kohl's account actually was fraudulent. There can be a lot of reasons that an account drops off. There are a lot of reasons that a company can have a soft credit polls. And so, you know, you just, what we have here is just kind of a, I mean, it's pretty far, Niob was controversial itself, right? You had a dissent there. Here you don't have all of the various allegations that negated all the other stuff that could have been a basis, nor do you really have anything that indicates that from Experian's standpoint, that they didn't have what was necessary from Kohl's to provide them with, you know, their procedures involve getting something from Kohl's explaining the basis for it. We don't know that that was negated. And, I mean, look, the best case for this really is, you know, the cases for Twombly and Iqbal. I mean, this is just not enough to get you close to what amounts to, I mean, this is exactly what is at best as consistent with perfectly permissible credit disclosure as not. All right. Let me just see if there's any questions. Judge Gould, do you have any questions? No questions here, thank you. Any further questions? All right. Thank you very much. Come forward. You're basically out of time, but I gave extra time here, so I'll give you an extra, I think it was four minutes. Thank you, Your Honor. Just to touch on some of the issues that opposing counsel brought up, I certainly agree that it would have been impossible for us, as I mentioned in the opening, to have actually amended the complaint, you know, and provide that hypothetical amendment, you know, especially in light of the intervening authority in NAAB and Shaw. In terms of the last point that counsel raised about the failure to follow reasonable procedures as that the mere opposite of NAAB, and for example, in NAAB, the question was it was a BF claim where somebody got a credit report without an impermissible purpose. Whether the harm to consumers and whether the issues involved in litigating that case stem from the failure to, or the actual obtaining of that impermissible report, or an experienced case looking the other way while Coles obtained it, are two sides of the same coin, and so the same privacy concerns that are at issue in the NAAB case are directly impacted by the failure to follow reasonable procedures here. In terms of the standing argument that counsel raised, I'm glad that Huff was and you look at what the Huff and Dreher cases say, both of those cases say that one of the harms that can occur from a G violation can be lost time. You know, Huff points out and Dreher points out that the plaintiffs did not allege those things, but we did. We said that Mr. Vizcarra's had to take efforts in considering his disclosures, ergo he lost time in this case. So we have, as it relates to real-world harm, even if the court is not prepared to accept the extension of SIAD into 1681G for a concrete informational injury, we still have actual real-world harm in this case. Additionally, Vizcarra suffered economic damages. They're not illustrated in the complaint, but during the discovery period, he provided interrogatory responses and testimony indicating that he had a fraud product that he was going to let expire, and because of the or began purchasing the product, it had been free before, and incurred expenses in doing so. So in terms of actual real-world harm, I think that Huff and Dreher actually support our position. And NAAB, of course, from the EA perspective, and we're talking about congressionally protected privacy rights, as I said a moment ago, that's an interest that is just as recognizable here. The question about whether the complaint would have been futile, I think that Your Honor's question about alleging whether or not we can conform to NAAB, we absolutely can, because what we did not have at the time that we filed this complaint or the time that this case was decided was the Ninth Circuit's determination that for information particularly within the defendant's possession, custody, or control, which absolutely would be the purpose that and absolutely would be the confidential internal procedures that they adopted to prevent these disclosures, is information entirely within experience purview. I'll also point out, Your Honor, that in the NAAB oral argument, the credit report that was confusing in that case was also an experienced credit report. So that's an issue there. Finally, I will note that in terms of dismissal with prejudice versus without, an issue Your Honor raised, the one issue may be that if the dismissal was without prejudice, that would still prejudice us because the time to bring this claim has expired and my time has expired. Thank you very much. Anybody, do you have any questions, Judge Kuhl? No questions. Just have one. Experience counsel said that in his red brief, he made an the claim that Experian had no permissible purpose to make the Kohl's disclosure was not in the complaint. And he's right, it's at page 29 through 31 of the red brief. And then he also went on to say that you did not counter that argument in your reply brief. And I'm wondering if you could comment on that and tell me whether, in fact, you did counter that argument in your reply brief. Certainly, Your Honor. In the reply brief, we pointed out that a violation of EA, and we referenced the cardinality material in which experienced opponents testified contrary to this case, that permissible purpose information would be on a report sent to a third party. We commented that we've everything that EA required us to do to plead that claim. So we did so generally. But in connection with Your Honor's specific question, I would have to look at the brief to give you a direct insight. All right. Thank you very much, Mr. Clark, Mr. Fetter. Appreciate the arguments here today. The case of Thomas Voskares versus Experian Information Solutions is submitted.
judges: Gould, Murguia, Feinerman